# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DENNIS CARRINGTON, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>    v.<br><br>EXPERIAN INFORMATION SOLUTIONS INC.,<br><br>        Defendant. | Case No.: 19-cv-398<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* (the "EFTA"), the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA"), the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18 *et seq.* (the "WDTPA"), and common law principles of contract law.

## JURISDICTION AND VENUE

2.      The court has subject matter jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1693m, and 28 U.S.C. §§ 1331, 1337, and 1367. The court also has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1331(d) because this is a class action in which: (1) there are more than one hundred (100) members in the proposed class; (2) various members of the proposed class are citizens of states different from where Defendants are citizens; and (3) the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.00 in the aggregate.

3.      Venue in this District is proper in that Defendant directed its conduct into the District.

## PARTIES

4. Plaintiff Dennis Carrington is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff is a "consumer" as defined in the EFTA, 15 U.S.C. § 1693a(6), in that he is a natural person.

6. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that any alleged debts that Defendants attempted to collect from Plaintiff arose from alleged agreements to defer payment.

7. Defendant Experian Information Solutions, Inc. ("Experian") is a foreign business corporation with its principal offices located at 475 Anton Blvd, Costa Mesa, California 92626. Experian is subject to personal jurisdiction within the Western District of Wisconsin.

## FACTS

8. On or about April 30, 2018, Defendants initiated an electronic funds transfer in the amount of $26.99 from Plaintiff's checking account with U.S. Bank.

9. On or about May 29, 2018, Defendants initiated a second electronic funds transfer in the amount of $26.99 from Plaintiff's account.

10. On or about June 29, 2018, Defendants initiated a third electronic funds transfer in the amount of $26.99 from Plaintiff's account.

11. Every month, Experian continues to initiate electronic funds transfer in the amount of $26.99 from Plaintiff's account.

12. At some point prior to August of 2018, Plaintiff noticed the charges had been deducted from his checking account with U.S. Bank by "Experian."

13. Plaintiff does not recall authorizing the electronic funds transfers or entering into any agreement with Experian for goods or services in exchange for the funds subject to the electronic funds transfers. In the event Plaintiff did enter into such agreement, such agreement would be subject to the implied covenant of good faith and fair dealing.

14. The implied covenant of good faith and fair dealing would, *inter alia*, provide that Experian would abide by all applicable state and federal laws and regulations, including the Electronic Funds Transfer Act, which requires Experian to honor any cancellation of Plaintiff's electronic transfer of funds upon oral or written request. *See* 12 CFR § 1005.34.

15. Furthermore, upon information and belief, in the event Plaintiff entered into an agreement with Defendant, Defendant omitted from any communications with Plaintiff material representations regarding Defendants' pricing and cancellation practices. Upon information and belief, Defendant's cancellation policies and practices are designed for the purpose of making cancellations of payments effectively impossible. Defendant knew or should have known that consumers would have a reasonable expectation any agreement giving rise to such charges may be cancelled at any time upon written or oral notice, without consequence and that consumers would rely on such reasonable expectations and omissions when entering into any such agreement with Defendant.

16. In attempt to cancel the services associated with such electronic funds transfers, Plaintiff called the toll free number for Experian, and reached a telephone recording which explained that in order to cancel the payments, he needed to send a written letter with details including his driver's license, social security number, and address.

17. On or about August 18, 2018, Plaintiff mailed a letter to Defendants with the subject "Cancellation of Service." A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

18. On or about August 29, 2018, notwithstanding Plaintiff's attempts to contact Defendant both orally and in writing to cancel the automated electronic funds transfers from his account, Defendants initiated another electronic funds transfer in the amount of $26.99 from Plaintiff's account.

19. On or about September 6, 2018, Experian responded to <u>Exhibit A</u> by mailing Plaintiff a letter. A copy of this letter is attached to this complaint as <u>Exhibit B</u>.

20. <u>Exhibit B</u> confirmed that Defendants received <u>Exhibit A</u>.

21. <u>Exhibit B</u> states that Defendants "believe that we could best answer your questions over the telephone. Please call us at 1 (800) 509-8495."

22. Experian's website provides the following: "How do I cancel my membership? If you're a member of Experian CreditWorksSM, Experian Credit TrackerSM, or Triple Advantage® and have questions about your subscription, you can call us at 1 479 343 6239." [Website: https://www.experian.com/help/ Visited on November 30, 2018.]

23. On or about September 30, 2018, and for several months thereafter, again notwithstanding Plaintiff's attempts to contact Defendant both orally and in writing to cancel the automated electronic funds transfers from his account, Defendant initiated another electronic funds transfer in the amount of $26.99 from Plaintiff's account.

### *The EFTA*

24. The purpose of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights." 15 U.S.C. § 1693(b).

25. "Electronic funds transfer" is defined as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1692a(7).

26. 15 U.S.C. § 1693e(a) provides that "[a] consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer."

27. Under 12 CFR § 1005.30(e)(1) a "remittance transfer" means "the electronic transfer of funds requested by a sender to a designated recipient that is sent by a remittance transfer provider. The term applies regardless of whether the sender holds an account with the remittance transfer provider, and regardless of whether the transaction is also an electronic fund transfer, as defined in § 1005.3(b)."

28. Under 12 CFR § 1005.30(f)(1) "Remittance transfer provider" means "any person that provides remittance transfers for a consumer in the normal course of its business, regardless of whether the consumer holds an account with such person."

29. Under 12 CFR § 1005.34, "Except as provided in § 1005.36(c), a remittance transfer provider shall comply with the requirements of this section with respect to any oral or written request to cancel a remittance transfer from the sender that is received by the provider no later than 30 minutes after the sender makes payment in connection with the remittance transfer if: (1) The request to cancel enables the provider to identify the sender's name and address or telephone number and the particular transfer to be cancelled; and (2) The transferred funds have not been picked up by the designated recipient or deposited into an account of the designated recipient."

*The WCA*

30. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

31. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

32. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

33. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

34. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

35. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats.

§§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

36. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

37. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

38. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

### The WDTPA

39. The purpose of the WDTPA is to protect the residents of Wisconsin from any untrue, deceptive, or misleading representations made to promote the sale of a product.

40. Wis. Stat. § 100.18(1) prohibits any "advertisement, announcement, statement or representation [that] contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

41. The WDTPA provides a private right of action for "[a]ny person suffering pecuniary loss" because of a violation of the WDTPA. Wis. Stat. § 100.18(11)(b)2.

## COUNT I – Fraud in the Inducement

42. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

43. Count I is brought on behalf of both classes.

44. To the extent Plaintiff may have entered into an agreement with Defendant, such agreement would be subject to the implied covenant of good faith and fair dealing, which would provide that Defendant would abide by all applicable state and federal laws and regulations, including the Electronic Funds Transfer Act, which requires Experian to honor any cancellation of Plaintiff's electronic transfer of funds upon oral or written request. *See* 12 CFR § 1005.34.

45. Upon information and belief, to the extent Plaintiff may have entered into an agreement with Defendant, Defendant further omitted material facts that were susceptible of knowledge, with the express intent of inducing Plaintiff to act, namely Defendants' pricing and cancellation practices.

46. To the extent that Plaintiff may have entered into an agreement with Defendant for any services in exchange for the above referenced charges, Plaintiff justifiably and reasonably would have relied on his expectations that he could have cancelled such an agreement after providing adequate oral or written notice at any time, without consequence.

47. Defendants had superior knowledge and exclusive control over the material facts, and had a duty to disclose its pricing and cancellation policies prior to Plaintiff obtaining his credit report.

48. Defendants' false representations and omissions were intended to cause, and in fact caused, Plaintiff to obtain and continue paying for unwanted services from Defendants, and

Defendants would not have obtained or paid for these services but for Defendants' fraudulent and deceptive representations.

## COUNT II – EFTA

49. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

50. Count II is brought on behalf of both classes.

51. 15 U.S.C. § 1693e(a) provides that "[a] consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer."

52. Plaintiff never authorized Defendants to initiate electronic funds transfers from Plaintiff's account with US Bank.

53. Even assuming Plaintiff initially authorized Defendants to initiate electronic funds transfers from Plaintiff's account with US Bank, Plaintiff properly revoked that authorization by telephone and written notice.

54. Defendants' conduct is inconsistent with 15 U.S.C. §§ 1693e(a).

55. Defendants initiated electronic funds transfers from Plaintiff's account without Plaintiff's consent and/or after Plaintiff's consent had been properly revoked.

56. Defendants violated 15 U.S.C. §§ 1693e(a).

## COUNT III – WCA

57. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

58. Count III is brought on behalf of Class II.

59. Defendants treated Plaintiff's alleged obligation as arising from a consumer transaction based on a series of agreements to defer payment.

60. Plaintiff never authorized Defendants to initiate electronic funds transfers from Plaintiff's account with US Bank.

61. Even assuming Plaintiff initially authorized Defendants to initiate electronic funds transfers from Plaintiff's account with US Bank, Plaintiff properly revoked that authorization by telephone and written notice.

62. Defendants informed Plaintiff by telephone that the only way for him to cancel the electronic funds transfers from his account with US Bank was to provide written notification to Defendants.

63. When Plaintiff provided written notice to Defendants that he wished to cancel the electronic funds transfers from his account with US Bank, Defendants responded by directing him to contact Defendants by telephone.

64. Defendants initiated electronic funds transfers from Plaintiff's account without Plaintiff's consent and/or after Plaintiff's consent had been properly revoked.

65. Defendants violated Wis. Stat. § 427.104(1)(j).

## COUNT IV – WDTPA

66. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67. Count IV is brought on behalf of Class II.

68. Upon information and belief, to the extent that Plaintiff may have entered into an agreement with Defendant for any services in exchange for the above referenced charges,

Defendants falsely represented that Plaintiff could cancel any agreement he may have entered into with Defendant at any time.

69. Defendants failed to disclose the confusing and elaborate process apparently required for cancelling any such agreement.

70. As a direct and proximate result of Defendants' unlawful and deceptive practices, Plaintiff was injured and suffered pecuniary loss, including but not limited to the fees received by Defendants for the credit monitoring services, the loss of his time in cancelling or attempting to cancel the unwanted services, and the loss of time and money spent disputing the unauthorized charges.

71. Upon information and belief, Defendants' actions were knowing and willful. Defendants are well aware that many consumers who are interested in obtaining their credit reports have no interest whatsoever in Defendants' credit monitoring services and Defendants intentionally deceive consumers into paying for these unwanted credit monitoring services by "bundling" credit-monitoring services with credit reporting services

72. Defendants violated Wis. Stat. § 100.18(1).

## COUNT V – Breach of Contract

73. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

74. Count V is brought on behalf of both classes.

75. To the extent that Plaintiff may have entered into an agreement with Defendant for any services in exchange for the above referenced charges, Plaintiff's agreement was contingent on the right to terminate his membership at any time without any penalty.

76. Defendants did not honor Plaintiff's repeated attempts to terminate his membership and initiated electronic funds transfers from his account with US Bank in the amount of $26.99 even after Plaintiff expressly revoked Defendants' authorization to do so.

77. Plaintiff was charged for services that he never wanted or agreed to, and was charged for services that he had properly cancelled.

78. Defendants breached the implied covenant of good faith and fair dealing by failing to disclose the consequences of membership in CreditCheckTotal.

79. Defendants breached the implied covenant of good faith and fair dealing by not permitting Plaintiff to cancel, and by continuing to bill Plaintiff for unwanted and properly cancelled services.

## **COUNT VI – Unjust Enrichment**

80. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81. Count VI is brought on behalf of both classes.

82. Defendants acted unlawfully, unfairly, and deceptively.

83. As a result of Defendants' unlawful, unfair, and deceptive conduct, Plaintiff paid unauthorized charges for unwanted services.

84. Defendants obtained a benefit as a result of their unlawful, unfair, and deceptive conduct in the form of the unauthorized charges for unwanted services.

85. Under principles of equity and good conscience, Defendants should not be permitted to retain revenue that it acquired by virtue of its unlawful conduct. All funds, revenue, and benefits received by Defendants rightfully belong to Plaintiff and those similarly situated.

## CLASS ALLEGATIONS

86. Plaintiff brings this action on behalf of two Classes.

87. Class I consists of:

(a) all natural persons in the United States of America, (b) who enrolled in Defendants' credit checking services at CreditCheckTotal, during the Class Period, (c) were charged a monthly service fee, (d) that they attempted to avoid by canceling membership by phone or written letter.

88. Class II consists of:

(a) all natural persons in the State of Wisconsin, (b) who enrolled in Defendants' $1 credit checking services at CreditCheckTotal, during the Class Period, (c) and were later charged a monthly service fee, (d) that they attempted to avoid by canceling membership by phone or written letter.

89. The "Class Period" for Class I dates back to the longest applicable statute of limitations for any claims asserted on behalf of Class I from the date this action was commenced and continues through the date this action was commenced.

90. The "Class Period" for Class II dates back to the longest applicable statute of limitations for any claims asserted on behalf of Class II from the date this action was commenced and continues through the date this action was commenced.

91. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

92. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are:

> i. Whether Defendants attempted to collect amounts from customers to which they had no right;

    ii. Whether Defendants failed to allow consumers to cancel their memberships during or after the seven-day trial membership period;

    iii. Whether Defendants failed to inform consumers how to cancel membership in CreditCheckTotal;

    iv. Whether Defendants improperly limited the method of cancellation;

    v. Whether Defendants made misrepresentations or omissions of material fact about their cancellation policies, pricing, and the nature of their services;

    vi. Whether Defendants intended to cause confusion or misunderstanding among consumers regarding the pricing and cancellation policy of its credit monitoring services;

    vii. Whether Defendants misled consumers to believe that they could not stop unauthorized electronic funds transfers by contacting their financial institutions rather than Defendants;

    viii. Whether Defendants engaged in a practice or act with intent to sell or increase the consumption of its services, or with intent to deceive the public into obtaining unwanted services;

    ix. Whether Defendants engaged in a practice or act that it knew or should have known would be unfair, deceptive, and fraudulent;

    x. Whether Defendants failed to provide safeguards to prevent the misconduct at issue;

    xi. Whether Defendants have been unjustly enriched;

      xii. Whether Plaintiff and members of the Class were harmed and suffered damages as a result of Defendants' conduct, and if so, the appropriate amount of relief; and

      xiii. Whether as a result of Defendants' misconduct, Plaintiff and the Class are entitled to equitable relief, and if so, the nature of such relief.

93. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

94. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

95. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

96. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)    actual damages;

(b)    statutory damages;

(c)    punitive damages;

(d)    injunctive relief;

(e)    attorneys' fees, litigation expenses and costs of suit; and

(f)    such other or further relief as the Court deems proper.

Dated: May 15, 2019

**ADEMI & O'REILLY, LLP**

By:   /s/ Robert K. O'Reilly
       Robert K. O'Reilly (SBN 1027032)
       Mark A. Eldridge (SBN 1089944)
       Jesse Fruchter (SBN 1097673)
       Ben J. Slatky (SBN 1106892)
       3620 East Layton Avenue
       Cudahy, WI 53110
       (414) 482-8000
       (414) 482-8001 (fax)
       roreilly@ademilaw.com
       meldridge@ademilaw.com
       jfruchter@ademilaw.com
       bslatky@ademilaw.com