IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DENNIS CARRINGTON, individually and on
behalf of all others similarly situated,

       Plaintiff,

 v.               OPINION and ORDER

EXPERIAN HOLDINGS, INC.,
CONSUMERINFO.COM, INC.,       19-cv-398-jdp
d/b/a EXPERIAN CONSUMER SERVICES, and,
EXPERIAN INFORMATION SOLUTIONS, INC.,

       Defendants.

---

  This is a proposed class action that arises out of an alleged refusal to cancel credit monitoring services. Plaintiff Dennis Carrington alleges that he never signed up for services with defendants, but they deducted money from his bank account for several months, even after he wrote them a letter directing them to cancel the services. Carrington asserts claims under the Electronic Funds Transfer Act, the Credit Repair Organizations Act, the Wisconsin Consumer Act, and Wisconsin common law.[1]

  Defendants have filed motions to: (1) dismiss the case for lack of personal jurisdiction; (2) dismiss the case for failure to state a claim; (3) strike the class allegations; and (4) sanction Carrington under Federal Rule of Civil Procedure 11. Dkt. 17 and Dkt. 24. For his part,

---

[1] Carrington originally asserted additional claims for fraud in the inducement and violations of the Wisconsin Deceptive Trade Practices Act, but he later filed a notice with the court that he was "withdrawing" those claims. Dkt. 22. The court construes Carrington's notice as a motion for leave to amend his complaint under Federal Rule of Civil Procedure 15 and will grant the motion. *See Taylor v. Brown,* 787 F. 3d 851, 857-58 (7th Cir. 2015) (appropriate vehicle for dismissing less than the entire action is an amended pleading under Federal Rule of Civil Procedure 15(a)).

Carrington filed a motion to strike new arguments raised in defendants' reply brief in support of their motion to dismiss, or, in the alternative to accept Carrington's surreply brief. Dkt. 30.

The court will grant Carrington's alternative request to consider his surreply brief. Some of the arguments Carrington objects to were not new, but the court sees no unfair prejudice to defendants in considering Carrington's brief. As for defendants' motions, the court concludes that it may exercise personal jurisdiction over defendant Consumerinfo.com, which calls itself Experian Consumer Services, but that Carrington's amended complaint doesn't state a claim upon which relief may be granted. Carrington doesn't ask the court for leave to amend, so the court will dismiss the case with prejudice. That ruling moots defendants' motion to strike the class allegations in the amended complaint.

The court will deny the motion for Rule 11 sanctions. The court isn't persuaded that any of Carrington's claims are legally frivolous.

## ANALYSIS

**A.  Personal jurisdiction**

The court must first decide whether Carrington has shown that the court can exercise personal jurisdiction over each of the defendants. *See Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584 (1999) ("Personal jurisdiction . . . is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication." (internal quotation marks omitted)). In their motion to dismiss, defendants focus on the requirements of the Due Process Clause, so the court will do the same.[2]

---

[2] Generally, a plaintiff must meet the requirements of both due process and state law. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010. But defendants don't respond to Carrington's arguments that jurisdiction is

The Supreme Court has identified two types of personal jurisdiction: general and specific. There is no serious contention that Carrington has satisfied the requirements of "general jurisdiction," which would require him to show that defendants' operations within Wisconsin are "so substantial and of such a nature as to justify suit on causes of action arising from dealings entirely distinct from those activities." *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 698 (7th Cir. 2015). Carrington says that defendants have "numerous [and] extensive contacts with the general Wisconsin populace" because their "core business is collecting and disseminating credit data." Dkt. 23, at 7. But Carrington cites no authority for the view that the type of contacts he identifies would make defendants "essentially at home" in Wisconsin. *Kipp*, 783 F.3d at 698. It is well established that a "corporation's continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011). Under Carrington's view, each of the defendants could be sued for any reason in any state in the country.

The real question is whether the court has "specific jurisdiction," which requires the plaintiff to show that the defendant has "purposefully directed" conduct related to the plaintiff's claim at the forum state. *See Curry v. Revolution Labs., LLC,* 949 F.3d 385, 398 (7th Cir. 2020).[3] To satisfy that requirement, Carrington relies on his allegation that "Experian

---

proper under multiple provisions of Wisconsin's long-arm statute. *See* Dkt. 23, at 12–16. Issues related to personal jurisdiction can be waived, *see Relational, LLC v. Hodges*, 627 F.3d 668, 672 (7th Cir. 2010), so defendants' "failure to grapple with these issues . . . results in waiver." *Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1054 (7th Cir. 2019).

[3] If the plaintiff makes that showing, the burden shifts to the defendant to show that an exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Curry*, 949 F.3d at 402 (internal quotation marks omitted). But defendants don't discuss that

intentionally deducted funds from Carrington's Wisconsin checking account after Carrington had directly informed Experian that they were no longer authorized to do so and any prior authorization had been revoked." Dkt. 23, at 11 (citing Dkt. 11, ¶¶ 39–47).

Defendants contend that Carrington's allegation is insufficient for two reasons. First, they say that their alleged conduct wasn't purposeful because they couldn't determine based on the information that Carrington provided that they were wrongfully deducting money from Carrington's account. Citing a declaration accompanying their reply brief, defendants say that Carrington never had an account with them, but someone else had stolen his payment information to open an account under a different name. Because Carrington didn't provide his payment information when he first complained about the deductions, defendants had no way of confirming Carrington's allegations. Dkt. 26.

This declaration doesn't help defendants because they are confusing personal jurisdiction with the merits and purposeful conduct with wrongful conduct. Defendants don't deny that they knew that they were deducting money from a Wisconsin account. It is well established that commercial gain from a state on a matter closely related to the plaintiff's claim is enough to show purposeful direction. *See, e.g.*, *Curry*, 949 F.3d at 399 (sales to state residents). Carrington must prove that the conduct was unlawful to prevail on his claims, but that's not necessary to show that he is entitled to bring the suit in Wisconsin.

Second, defendants say that Carrington has improperly grouped all of the defendants together, repeatedly referring to them in his complaint simply as "Experian" or "defendants" without identifying each defendant's contacts with the state. Carrington says that it doesn't

---

requirement, so they have forfeited that issue as well.

matter because the three defendants are "affiliated." Dkt. 23, at 16. But the general rule is that a plaintiff must established personal jurisdiction independently over each defendant, even in cases involving closely affiliated companies such as parents and subsidiaries. *See KM Enterprises, Inc. v. Global Traffic Technologies, Inc.*, 725 F.3d 718, 733–34 (7th Cir. 2013). The contacts of one defendant may not be imputed to another defendant unless the plaintiff can show that it would be appropriate to pierce the corporate veil, *id.*, something that Carrington hasn't tried to show in this case.

Carrington says that he sued all three defendants, not because he believes all three are responsible for deducting money from his account, but because he doesn't know *which* of the three is responsible. Before he filed this lawsuit, the information he had received simply referred to "Experian" without identifying which entity was involved. Defendants say that's just too bad because "it is Plaintiff's burden to demonstrate the existence of personal jurisdiction at this stage." Dkt. 29, at 8. But defendants don't explain how Carrington would do that without discovery. Defendants say that the court shouldn't authorize discovery so that Carrington can go on a "fishing expedition," *id.*, but this isn't a situation in which it is speculative to believe that the court may exercise jurisdiction over one of the defendants. After all, there is no dispute that one of the three defendants took Carrington's money.

Fortunately, the court need not pause the case to allow for jurisdictional discovery because it is reasonable to infer from defendants' reply submissions that it was defendant Experian Consumer Services that deducted money from Carrington's account. Defendants say that Consumer Services is the only one of the three entities that offers credit monitoring services, which was the alleged purpose of the deduction. Dkt. 29, at 5 (citing Dkt. 26 and Dkt. 27). And the declaration accompanying defendants' reply brief was provided by an

5

executive for Consumer Services. *See* Dkt. 26. The executive states that Carrington's "payment information had been associated with another ECS [Experian Consumer Services] account." *Id.*, ¶ 11. That is more than sufficient to support an exercise of personal jurisdiction over Consumer Services at this stage of the case. *See Curry*, 949 F.3d at 392–93 (plaintiff need only make "prima facie" showing of personal jurisdiction if court considers motion to dismiss without an evidentiary hearing).

Carrington filed a 20-page surreply brief challenging many of defendants' assertions in their reply brief, *see* Dkt. 30, but Carrington didn't dispute defendants' evidence that Consumer Services is the only one of the defendants that provides credit monitoring services or that his payment information was associated with a Consumer Services account. And Carrington doesn't identify any basis to believe that one of the other two entities was involved in deducting money from his account.

So the court concludes that it may exercise personal jurisdiction over Consumer Services but will dismiss the other two defendants for lack of personal jurisdiction. For the remainder of the opinion, the court will refer to Consumer Services as simply "Experian" and will disregard arguments related to the other two defendants except where noted.

**B. Failure to state a claim**

    **1. Electronic Fund Transfers Act**

Carrington alleges in his complaint that Experian violated the Electronic Fund Transfers Act (EFTA) by "initiat[ing] electronic funds transfers from Plaintiff's account with US Bank" without his authorization, in violation of 15 U.S.C. § 1693e(a). Dkt. 11, ¶ 77. Carrington relies on the first sentence of that provision, which states: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of

6

such authorization shall be provided to the consumer when made." "A preauthorized electronic fund transfer" is "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(10). Carrington's argument is straightforward: Experian violated § 1693e(a) because it didn't obtain written authorization from Carrington before making monthly deductions from his account for credit monitoring services.

Experian contends that the EFTA claim is untimely because Carrington didn't bring it "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g). Carrington alleges in his complaint that Experian first initiated an electronic transfer without his consent on April 30, 2018, Dkt. 11, ¶ 27, but Carrington didn't file the lawsuit until May 15, 2019, more than a year later.[4] Although a statute of limitations is an affirmative defense, a court may grant a motion to dismiss an untimely claim if it is clear from the face of the complaint that the defense applies. *See O'Gorman v. City of Chicago,* 777 F.3d 885, 889 (7th Cir. 2015).

Carrington contends that dismissal isn't appropriate for three reasons, but none of them save the claim. First, he says that only the first unauthorized transfer is outside the limitations period, and he cites three cases in which courts have held that each transfer triggers a new statute of limitations. *See Gunter v. United Fed. Credit Union*, No. 315CV00483MMDWGC, 2018 WL 4286181, at *4 (D. Nev. Sept. 7, 2018); *Vehec v. Asset Acceptance, LLC*, No. CV 15-1035, 2016 WL 4995066, at *3 (W.D. Pa. Aug. 8, 2016); *Diviacchi v. Affinion Grp., Inc.*, No. CIV.A. 14-10283-IT, 2015 WL 3631605, at *8 (D. Mass. Mar. 11, 2015). But Carrington ignores the fact that this court and the majority of other courts have rejected that view:

---

[4] Carrington filed an amended complaint on September 25, 2019, but both sides assume that the amended complaint relates back to May 15, so the court will make the same assumption.

> Although the Seventh Circuit has not addressed the precise issue, most district courts that have considered the EFTA statute of limitations have concluded that the limitation period is triggered when a financial institution makes a first unauthorized transfer or charges an overdraft fee . . . . Although the consumer is financially injured with each transfer, the basis of the wrongful conduct is the failure to obtain proper authorization in the first instance. The EFTA claim based on such conduct is fully consummated when the first unauthorized transfer is made.

*Domann v. Summit Credit Union*, No. 18-cv-167-slc, 2018 WL 4374076, at *9–10 (W.D. Wis. Sept. 13, 2018) (citations omitted). Carrington doesn't offer any reason for departing from the conclusion in *Domann* in this case, so the court will follow that decision.

Second, Carrington includes a sentence in his opposition brief in which he says that "this case was filed less than a year from the end of the month when Carrington would have actually received the first bank statement identifying the charges." Dkt. 23, at 25. Carrington doesn't elaborate on this point or cite any authority for why it matters. As noted above, § 1693m(g) requires the plaintiff to bring a claim "within one year from the date of the occurrence of the violation," not within one year of receiving a bank statement showing a transfer.

Carrington may mean to contend that the court should apply the "discovery rule," under which the statute of limitations runs from the date that the plaintiff discovered his injury. But the Supreme Court has rejected the application of a "general" discovery rule for statutory violations and specifically rejected it in the context of claims under the Fair Debt Collection Practices Act, which uses language nearly identical to EFTA. *See* 15 U.S.C. § 1692k(d) (FDCPA action "may be brought . . . within one year from the date on which the violation occurs"); *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) ("It is not our role to second-guess Congress' decision to include a 'violation occurs' provision, rather than a discovery

provision."). So Carrington hasn't shown that the court should apply the discovery rule in this case.

Carrington's third argument is somewhat hard to follow, but the court understands him to be contending that the first transfer wasn't a "violation" of EFTA because it was "authorized" by the third-party who stole Carrington's identity. Dkt. 23, at 25. According to Carrington, it was only after Carrington wrote to Experian in August 18, 2018, and instructed Experian to cancel the credit monitoring services that the later transfers became "unauthorized." Because August 2018 is within the limitations period, Carrington believes that his claim is timely.

The court need not resolve this argument because, even if the court were to agree with Carrington, that would create a different problem, as Experian contends. As noted above, Carrington's claim is based on the first sentence of § 1693e(a), which requires advance written consent from the consumer for a transfer that is to occur at regular intervals. If, as Carrington contends, Experian *did* have written consent to initiate a preauthorized electronic fund transfer, then his claim is about stopping payment or revoking consent rather than failing to obtain consent in the first instance, so the first sentence of § 1693e(a) simply doesn't apply. In other words, the first sentence of § 1693(a) doesn't require consent for *each* transfer, only the first transfer.

Carrington concedes in another section of his response brief that claims to stop payment arise under the *second* sentence of § 1693e(a): a "consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer." As the text indicates and Carrington acknowledges, claims for a failure to stop payment may only be brought against a "financial institution." *See* Dkt. 23, at 21–22; *Miller v. Interstate Auto Grp.,*

*Inc.*, No. 14-cv-116-slc, 2015 WL 1806815, at *3–4 (W.D. Wis. Apr. 21, 2015). And Carrington doesn't dispute Experian's contention that it isn't a "financial institution" under the statutory definition, so Carrington can't prevail on a claim for a failure to stop payment. If Carrington means to contend that he was revoking consent rather than stopping payment, he fails to cite a provision of EFTA that would cover that situation.

The court concludes that Carrington has failed to state a claim under EFTA.

### 2. Credit Repair Organizations Act

Carrington says that Experian violated two provisions of the Credit Repair Organizations Act (CROA), 15 U.S.C.A. § 1679b(a)(4) and § 1679e(3). Experian challenges Carrington's claims under both provisions.

#### a. Section 1679b(a)(4)

The court begins with the text of the provision:

> No person may . . . engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.

15 U.S.C. § 1679b(a)(4). Experian contends that Carrington can't satisfy multiple parts of this provision. Specifically, Experian says that: (1) Carrington hasn't alleged that it provides the "services of a credit repair organization"; and (2) Carrington hasn't identified any "fraud or deception" committed by Experian. The court agrees with Experian's first contention, so it isn't necessary to consider the second.

> The term "credit repair organization" is defined in 15 U.S.C.A. § 1679a(3). It means
>
>> any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return

> for the payment of money or other valuable consideration, for the express or implied purpose of—
>
> (i) improving any consumer's credit record, credit history, or credit rating; or
>
> (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

Experian points out that Carrington doesn't allege in his complaint that Consumer Services is a "credit repair organization." Rather, he alleges only that defendant *Experian Information Solutions* is a credit repair organization because it advertises a service called "Experian Boost" to help consumers raise their credit scores.

Carrington doesn't respond directly to Experian's argument. Instead, he includes a line in his opposition brief that the services advertised by Information Solutions are "performed" by Consumer Services, without explaining what he means by that. Dkt. 23, at 27. If Carrington means to allege that Consumer Services is responsible for the "Experian Boost" service, that claim would fail because Carrington doesn't allege that he was charged for that service. In fact, the advertisement Carrington cites says that "Experian Boost" is free, Dkt. 11, ¶ 17, and Carrington doesn't allege otherwise. Section 1679a(3) states that an entity is not a credit repair organization unless it offers credit repair services "in return for the payment of money or other valuable consideration." So Carrington can't point to a free service to satisfy the requirements of the statute.

In his surreply brief, Carrington includes a confusing sentence in which he says that it doesn't matter that "Experian Boost" is free because it "only underscores the fraudulent nature of Experian's business practices—effectively bundling services together and inducing consumers into paying for services that they do not actually want and end up unable to cancel." Dkt. 30-1, at 8. Again, Carrington doesn't explain what he means by this, and he doesn't identify any

11

other credit repair services that are "bundled" with Experian Boost. By failing to develop this argument, Carrington has forfeited it. *See Lee,* 912 F.3d at 1054.

Carrington includes another line in his opposition brief in which he says that he "assum[es]" that Consumer Services' credit monitoring services would qualify Consumer Services as a credit repair organization, without explaining what that assumption is based on. In his surreply brief, Carrington relies heavily on *Helms v. Consumerinfo.com, Inc.*, 436 F. Supp. 2d 1220 (N.D. Ala. 2005), in which the court held that Consumer Services was a credit repair organization. But the court in *Helms* relied on advertisements from that time in which Consumer Services marketed credit repair services and then charged money for them. *Id.* at 1230–31. Carrington doesn't include similar allegations in his complaint or his briefs, so *Helms* isn't useful. Carrington can't rely on a case from 15 years ago to fill in the gaps of his own pleadings. At the least, Carrington must explain why he believes that the credit monitoring services offered by Experience *now* qualify under § 1679a(3). Carrington hasn't done that, so he has failed to state a claim under § 1679b(a)(4).

    b. **Section 1679e(3)**

This provision states:

> Any consumer may cancel any contract with any credit repair organization without penalty or obligation by notifying the credit repair organization of the consumer's intention to do so at any time before midnight of the 3rd business day which begins after the date on which the contract or agreement between the consumer and the credit repair organization is executed or would, but for this subsection, become enforceable against the parties.

15 U.S.C.A. § 1679e(3).

Consumer Services contends that Carrington's claim under § 1679e(3) fails for the same reason as his claim under § 1679b(a)(4): Experian is not a "credit repair organization." The court has already considered that that issue and need not do so again.

Experian raises a second contention that is even more straightforward: Carrington doesn't allege that he had a contract with Experian. Rather, Carrington alleges that he was charged because "an unauthorized third party registered for services provided by Experian." Dkt. 11, ¶ 33. Section 1679e(3) only applies to attempts to "cancel any contract," so the absence of a contract is fatal to this claim.

Carrington says almost nothing about this claim in any of his briefs. He includes one sentence in his opposition brief in which he says, "even if Carrington did not originally authorize the third-party to obtain services from Experian at his expense, he certainly could have ratified it at some later date. *See*, Restatement (Third) Agency Ch. 4." Dkt. 23, at 29. But it is not clear what point Carrington is making. Carrington doesn't allege that he ever "ratified" a contract with Experian, so it is simply irrelevant whether he "could have" done so.

The court will dismiss this claim as well.

### 3. Wisconsin Consumer Act

Carrington's claim under the Wisconsin Consumer Act (WCA) is based on the same conduct as the other claims: Experian's failure to obtain his authorization before deducting money from his bank account and its subsequent refusal to stop the deductions after Carrington complained. Carrington relies on Wis. Stat. § 427.104(1)(j), which states: "In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction . . . where there is an agreement to defer payment, a debt collector may

13

not . . . [c]laim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

Carrington doesn't respond to Experian's contention that he hasn't identified a debt that arose out of "an agreement to defer payment," which is one of the requirements of § 427.104(1)(j). Carrington says that he doesn't need his own agreement with Experian because his claim "aris[es] from" the agreement of the third party that used Carrington's payment information. But this misses Experian's more general point, which is that the credit monitoring services don't involve an agreement to defer payment; they are simply a purchase of services that can be cancelled at any time. *See Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120, 1134 (W.D. Wis. 2004). Even in his surreply brief, Carrington doesn't address this issue, so the court concludes that Carrington has forfeited it. *See Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1335 (7th Cir. 1995) ("[W]hen presented with a motion to dismiss, the nonmoving party must proffer some legal basis to support his cause of action. The federal courts will not invent legal arguments for litigants.").

### 4. Unjust enrichment

A claim for unjust enrichment has three elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had an appreciation or knowledge of the benefit; and (3) the defendant accepted or retained the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value. *Buckett v. Jante*, 2009 WI App 55, ¶ 9, 316 Wis. 2d 804, 812, 767 N.W.2d 376, 380. Experian seeks dismissal of this claim for the simple reason that Carrington hasn't alleged that Experian has retained any money it deducted from Carrington's account. Carrington doesn't contradict that assertion or otherwise respond to it, so the court will dismiss this claim.

### 5. Injunctive and declaratory relief

Carrington identifies requests for injunctive and declaratory relief as separate "counts" in his complaint, but that's inaccurate. A request for relief isn't a claim; it's a remedy in the event that the plaintiff proves his claim. *Selective Ins. Co. of S. Carolina v. City of Paris*, 769 F.3d 501, 508 (7th Cir. 2014). The court is dismissing all of Carrington's claims, so his requests for injunctive and declaratory relief are moot.

### 6. Leave to amend

Experian asks the court not to grant Carrington leave to amend his complaint because Carrington has already amended his complaint once, and because allowing him to do so again would be futile. Carrington doesn't respond to this argument, and he doesn't ask the court for leave to amend. The court construes Carrington's silence as a concession that the flaws in his complaint cannot be corrected with additional allegations, so the court will dismiss the case with prejudice.

## C. Sanctions

Experian seeks sanctions under Rule 11 on the ground that all of Carrington's claims are frivolous. *See Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020) ("The rule is principally designed to prevent baseless filings." (internal quotation marks omitted)). Carrington's amended complaint doesn't state any claim upon which relief may be granted, but a claim is not frivolous merely because it is unsuccessful. Consumer protection law in this area is subtle and not fully developed. The court isn't persuaded that any of Carrington's claims were devoid of even arguable merit, so the court will deny this motion.

ORDER

IT IS ORDERED that:

1. Plaintiff Dennis Carrington's "notice of withdrawal of claims," Dkt. 22, is construed as a motion to amend the complaint to dismiss Carrington's claims under the Wisconsin Deceptive Trade Practices Act and Wisconsin common law for fraud in the inducement, and the motion is GRANTED.

2. Carrington's motion to strike defendants' reply brief, Dkt. 30, is DENIED, but Carrington's alternative request for leave to file a surreply, Dkt. 30, is GRANTED.

3. Defendants' motion to dismiss for lack of personal jurisdiction, Dkt. 17, is GRANTED as to defendants Experian Holdings, Inc. and Experian Information Solutions, Inc., but the motion is DENIED as to defendant Consumerinfo.com.

4. Defendants' motion to dismiss for failure to state a claim, Dkt. 17, is DENIED as moot as to Experian Holdings and Experian Information Solutions but GRANTED as to Consumerinfo.com.

5. Defendants' motion to strike the class allegations, Dkt. 17, is DENIED as moot.

6. Defendants' motion for sanctions, Dkt. 24, is DENIED.

7. The clerk of court is directed to enter judgment and close this case.

Entered June 29, 2020.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge